**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ANAYA WASHINGTON, MICHELLE SOLAS, DINA VOLPE, MARC YANCEY, and DOUGLAS ANGONA,** ***individually and on behalf of all others similarly situated,***

**Plaintiffs,**

**-against-**

**REYNOLDS CONSUMER PRODUCTS LLC,**

**Defendant.**

**1:24-cv-02327-ALC-RFT**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Anaya Washington, Michelle Solas, Dina Volpe, Marc Yancey, and Douglas Angona (collectively "the Plaintiffs") bring this putative class action alleging violations of New York General Business Law Sections 349 and 350 for deceptive acts or practices and false advertising against Defendant Reynolds Consumer Products LLC ("Defendant"). Plaintiffs now seek to certify the class.

For the reasons that follow, the Court finds that the proposed class meets the requirements of Rule 23(a) and the relevant requirements of Rule 23(b) of the Federal Rules of Civil Procedure. Plaintiff's motion to certify the class is GRANTED.

## BACKGROUND

### I. Factual Background[1]

Defendant Reynolds Consumer Products LLC is a Delaware limited liability company with its principal place of business in Lake Forest, Illinois. SAC, ECF No. 27 ¶ 79. Defendant

[1] The following facts are taken from Plaintiffs' Second Amended Complaint and are presumed true for the purposes of this action.

manufactures, labels, markets, and sells aluminum foil under the "Reynolds Wrap" brand. *Id*. ¶ 1. Defendant's aluminum foil products include a label with the words, "FOIL MADE IN U.S.A." above three stars. *Id*.

The Federal Trade Commission ("FTC") defines "Made in the United States" and synonymous phrases to mean "any unqualified representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin." *See Id*. ¶ 3 (citing 16 C.F.R. §§ 323.1(a), 323.2). Plaintiffs contend that due to the label on Defendant's products, consumers expect that the raw materials used in the products are sourced from within the United States and that a substantial amount of the transformation of raw materials into Defendant's products takes place within the United States. *Id*. ¶ 6.

The sole commercial ore of aluminum is bauxite. *Id*. ¶ 8. The world's largest suppliers of bauxite for aluminum include Australia, Guinea, India, Brazil, and Jamaica. *Id*. ¶ 9. Since 1981, none of the bauxite mined in the U.S. was used for aluminum, and in 2013, U.S.-mined bauxite comprised less than 0.1 percent of world production. *Id*. ¶ 11, 12. Against this background, Plaintiff's argue, it would be impossible for Defendants to produce aluminum foil products without bauxite sourced from outside of the United States. *Id*. ¶ 14.

To make aluminum foil, bauxite is processed and refined into alumina, which is then turned into aluminum in the form of aluminum ingots through a smelting process. *Id*. ¶ 15. The aluminum ingots undergo further processing to make aluminum foil. *Id*. Each such stage of processing involves a multi-step, complicated process. *Id*. ¶ 16. A substantial portion of this processing – of bauxite to alumina and alumina to aluminum – occurs outside of the United States, according to the SAC. *Id*. ¶¶ 17, 18. Thus, a substantial amount of the making, manufacturing, and/or production

of Defendant's aluminum foil products takes place outside of the United States, contravening the "FOIL MADE IN U.S.A." label. *Id*. ¶ 19.

Plaintiffs and the putative class members were purchasers of Defendant's aluminum foil products. *Id*. ¶¶ 26, 36, 47, 58, 69. Plaintiffs allege that consumers read and relied on Defendant's representations when deciding to purchase the products at a price premium. *Id.* ¶¶ 26-27, 30. Plaintiffs allege that the price premium, of approximately $4.99 per 75 square feet higher than similar products, was a result of Defendant's intentionally false and misleading representations on its products' labels and packaging. *Id*. ¶ 34. Plaintiffs claim that, had they known the truth, they would not have purchased Defendant's products or would have paid less for them. *Id*. ¶ 33.

Defendant claims that the word "FOIL," placed before "MADE IN U.S.A.," refers only to the aluminum foil itself and is therefore a sufficient qualification. *Id*. ¶ 20. Plaintiffs, however, claim that reasonable consumers do not understand Defendant's label to refer only to the processing of aluminum ingots into aluminum foil and that the label is false and misleading. *Id*. ¶¶ 22-24.

## II. Procedural History

On March 3, 2024, Plaintiff Anaya Washington filed a complaint against Defendant alleging that Defendant violated New York General Business Law Sections 349 and 350 for deceptive acts or practices and false advertising. Complaint, ECF No. 1; N.Y. Gen. Bus. Law §§ 349, 350. On June 21, 2024, Plaintiff Washington amended the complaint, alleging the same violations of New York General Business Law Sections 349 and 350. First Amended Complaint, ECF No. 12.

Defendant filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") on July 22, 2024. Motion to Dismiss, ECF No. 13. This Court denied Defendant's motion to dismiss on March 3, 2025. ECF No. 19.

Plaintiffs and their counsel filed the SAC on April 18, 2025, adding Plaintiffs Solas, Volpe, Yancey, and Angona to the action. SAC, ECF No. 27. Defendant filed its answer to Plaintiffs' SAC on May 2, 2025. ECF No. 31.

On February 15, 2026, Plaintiffs and their counsel submitted a motion for class certification. ECF No. 52. Defendant filed its opposition on April 15, 2026. ECF No. 74. On July 14, 2026, Defendant moved for summary judgment. ECF No. 93.

## III. Proposed Class Definition

Plaintiffs seek to certify the following class:

All persons who purchased Reynolds Wrap aluminum foil labeled with the words "FOIL MADE IN U.S.A." (the "Product") in New York from March 27, 2021, to the present (the "Class Period"). ECF No. 52 at 9.

# DISCUSSION

## I. Class Certification

### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. Plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy

four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

**B. Numerosity**

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States*, 504 F.3d at 244–45. Although there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members.*" Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 120 (2d Cir. 2014). Plaintiff cites to sales data produced in discovery by third-party market research company Circana that show "voluminous sales of the Products in New York." Granade Decl., ECF No. 54 ¶ 20. This sales data supports the inference that the proposed class will exceed the 40-plaintiff threshold. Defendant does not dispute numerosity. Therefore, the numerosity requirement is easily satisfied.

**C. Commonality**

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States*, 504 F.3d at 245, "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338, 350 (2011). In consumer fraud cases, courts have found commonality satisfied where there is an objective question of whether a label is likely to deceive reasonable consumers. *See, e.g.*, *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021) (finding that the appearance of the claim "made with aged vanilla" on bottles and cans alike is "enough for a finding of commonality); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) (holding that the answer to whether the defendant's label is false and/or misleading "is common to all class members, and is apt to drive the resolution of this litigation").

Under N.Y. Gen. Bus. Law § 349, it is "unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service' in New York. *Newman v. Bayer Corporation*, 348 F.R.D. 567, 583 (S.D.N.Y., 2025) (citing N.Y. Gen. Bus. Law § 349) (alterations adopted). A prima facie case under N.Y. Gen. Bus. Law § 349 requires a plaintiff to "demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id*. (citing *Scotts EZ Seed*, 304 F.R.D. at 409) (internal quotations omitted). Assessments of materiality and deceptive acts under N.Y. Gen. Bus. Law § 349 require an objective inquiry. *Id*. (citing *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016)). "The same analysis applies to false advertising claims brought under [N.Y. Gen. Bus. Law] § 350." *Id*. (citing *Goldemberg*, 317 F.R.D. at 389). Neither Section 349 nor Section 350 require proof of justifiable reliance, nor proof that defendants intended to mislead consumers. *Id*. (internal citations omitted).

Plaintiffs contend that the issue of whether Defendant's "FOIL MADE IN U.S.A." representation is likely to deceive reasonable consumers under the objective "reasonable consumer" standard is "central to the validity" of each of the class members' claims under N.Y.

Gen. Bus. Law §§ 349 and 350. ECF No. 52 at 11; *see Wal-Mart*, 564 U.S. at 350. The question of what a reasonable consumer would believe Defendant's representation means and whether the Products conformed to that understanding is fundamental to this issue. *Id*. Further, Plaintiffs emphasize that the representation at issue appeared on all Products sold during the Class Period and that common evidence shows that reasonable consumers interpret the representation to mean all or virtually all foil product components were sourced in the United States. *Id*. Plaintiffs argue that the "reasonable consumer" inquiry requires objective, classwide proof to resolve in one fell swoop, supporting class certification. *Id*. Materiality is also assessed according to an objective standard. *Scotts EZ Seed*, 304 F.R.D. at 409 (S.D.N.Y. 2015). Questions concerning materiality will be resolved through common evidence and are therefore classwide.

Pointing to the record, Defendant contends that Plaintiffs fail to satisfy commonality and predominance because they lack proof of a classwide definition of "FOIL MADE IN U.S.A.," ECF No. 74 at 9-10; because they lack common evidence showing which consumers were exposed to the label at issue, *id*. at 16; and because they lack common evidence of a price-premium attributable to the label at issue, *id*. at 18. Since Defendant's challenge to commonality overlaps with its challenge to predominance, the Court will address these arguments in tandem below. *See supra* Section I(H); *see Newman*, 348 F.R.D. at 579 (citing *Drake v. Bayer Healthcare LLC*, No. 22-CV-1085, 2024 WL 4204921, at *4 (S.D. Cal. Sept. 16, 2024) (addressing the substance of defendant's commonality argument in the court's predominance analysis as a result of overlap between the two requirements). For reasons discussed in detail below, this Court finds that common questions of law and fact exist. Classwide proceedings will "generate common *answers* to drive the resolution of the litigation." *See Newman*, 246 F.R.D. at 579 (quoting *Mangahas v. Eight Oranges Inc.*, No.

22-CV-4150, 2024 WL 2801922, at *6 (S.D.N.Y. May 31, 2024) (internal quotations omitted) (emphasis in original)).

**D. Typicality**

Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States,* 504 F.3d at 245. A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id*. "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). But "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 184 (S.D.N.Y. 2005) (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)).

Plaintiffs assert that their claims and those of all class members arise from the same underlying conduct by Defendant — the deceptive labeling of aluminum foil products — and that the same relief is sought under these common legal claims. ECF No. 52 at 13. Plaintiffs further contend that the same evidence will be used to prove their claims and those of all class members. *Id*. Defendant argues that, since Plaintiffs could not articulate a common meaning of the disputed advertising claim in their testimony, their claims are atypical because Plaintiffs cannot establish that the statement at issue was materially misleading. ECF No. 74 at 23; *see* Isidro Decl., ECF No. 75, Ex. 3-7. Defendant further contends that Plaintiffs could not remember specific purchases or the amounts they paid for Defendant's products. *Id*. at 24. Therefore, Defendant claims, Plaintiffs could not prove injury, supporting the conclusion that their claims are atypical. *Id*. at 24-25.

Defendant fails to make a showing that these issues are unique to Plaintiffs or that they would threaten to become the focus of litigation. Indeed, variations in Plaintiffs' interpretation of the disputed advertising language or in their recollections of purchase price may present "colorable unique defense[s]," but the mere existence of these issues is not grounds to deny certification. *See Newman*, 346 F.R.D. at 580 (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at *4). "Courts have found typicality to be satisfied in false advertising cases where" the allegations amount to: "[p]laintiffs were exposed to and allegedly relied upon [d]efendant's advertising and business practices in purchasing [the product], which they allege was at inflated prices due to the misrepresentations." *Newman v. Bayer Corporation*, 348 F.R.D. 567, 580 (S.D.N.Y., 2025) (internal citations omitted). Here, Plaintiffs were exposed to the "FOIL MADE IN U.S.A." claim and allege that they relied on this representation when they purchased the products. Further, Plaintiffs allege that Defendant's business practices resulted in a price inflation of the products that were purchased. Therefore, the Court finds that typicality is met.

**E. Adequacy**

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995)

(quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Plaintiffs assert that their interests are aligned with those of the putative class members because Plaintiffs suffered the same harm as a result of Defendant's allegedly false or misleading label, Plaintiffs seek the same recovery as the class members, and each class member's claims arise under the same legal theories. ECF No. 52 at 14. Plaintiffs have no known antagonistic or conflicting interests with members of the proposed class. *Id*. The Granade, Ryan, and Sheehan Declarations each attest to the competency, experience, qualification, and ability of Plaintiffs' counsel to conduct the action vigorously. ECF No. 54 ¶¶ 4-5 & Ex. 1; Ryan Decl., ECF No. 55 ¶¶ 4- 10, 13, & Ex. 1; Sheehan Decl., ECF No. 56 ¶¶ 2-3, 5, & Ex. A. Counsel have no known conflicts of interest with the proposed class. ECF No. 54 ¶ 6; ECF No. 55 ¶ 12; ECF No. 56 ¶ 4. Defendant does not challenge the adequacy requirement. The requirement is satisfied.

**F. Ascertainability**

To certify a class, the Second Circuit has some requirements beyond Rule 23, including ascertainability. Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). Ascertainability is satisfied where a class is "identified by subject matter, timing, and location." *Id*. at 269-70. Here, the proposed class is comprised of all persons who purchased Reynolds Wrap aluminum foil labeled with the words "FOIL MADE IN U.S.A." in New York from March 27, 2021, to the present. ECF No. 52 at 9. This Court finds that the requirement of ascertainability is

satisfied because the putative class has been concretely identified by subject matter, timing, and location.

**G. Superiority**

Plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P. 11 23(b)(3)(D).

Plaintiffs contend that resolving their claims on a class basis is superior to litigating thousands of individual actions. ECF No. 52 at 20. Proceeding individually, Plaintiffs correctly observe, would be prohibitive due to minimal recovery, since claim values are too nominal to justify individual litigation. *Id*. at 20-21. Concentrating the action in a single suit is favorable to judicial economy and the consistency of outcomes. Here, the manageability of the proposed class is not of concern. Moreover, Defendant does not contest the superiority requirement. This Court finds this prong of Rule 23(b)(3) satisfied.

**H. Predominance**

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002). In false advertising cases, "[t]he

predominance analysis considers whether that common question is capable of common answers *on the basis of generalized proof*—i.e.[,] whether an 'objective, reasonable consumer' would be deceived." *Goldemberg*, 317 F.R.D. at 388 (S.D.N.Y. 2016) (emphasis in original). "Rule 23(b)(3) requires 'a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *Newman*, 348 F.R.D. at 583 (quoting *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original)). Predominance does not require the absence of individualized damages, but plaintiffs' damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Defendant argues that individual issues predominate because class members may have different interpretations of the label "FOIL MADE IN U.S.A." ECF No. 74 at 9. Differently put, Defendant contends that "Plaintiffs have no evidence that anyone shares their purported understanding of" the disputed language. *Id*. at 12. Defendant relies on *In re KIND LLC "Healthy & All Nat." Litigation*, 627 F.Supp.3d 269, where the court granted decertification after determining that the putative class lacked a common understanding of the disputed advertising claim. ECF No. 74 at 10. However, in that case, discovery had been completed prior to the court's decision to decertify for lack of commonality and predominance. *In re KIND LLC*, 627 F.Supp.3d at 295. Moreover, the plaintiffs in *In re KIND* had abandoned a claim related to similar advertising language, which "[eliminated their] theory of common proof." *Id. Cf. Newman*, 348 F.R.D. at 583 (certifying class prior to completion of discovery despite defendants' assertion that "class members may have different interpretations of disputed language"). Here, in contrast, the parties have not completed discovery and Plaintiffs' claims have not been substantially altered or abandoned so as to render commonality or predominance insufficient. Defendant's analogy to *In re KIND* and its

argument that varying interpretations of the disputed language vitiate commonality and predominance are therefore unavailing.

Defendant further argues that Plaintiffs do not make out a prima facie claim under N.Y. Gen. Bus. Law §§ 349 or 350 because they lack evidence of which consumers were exposed to the allegedly deceptive representations, and because they lack evidence that Defendant's claim caused Plaintiffs to purchase the products at a price premium. ECF No. 74 at 16, 18. However, Defendants focus much of their analysis on whether or not Plaintiffs can *prove* materiality and injury, rather than *show whether these questions are common* because they may be determined on a classwide basis. Thus, as far as a commonality and predominance inquiry is concerned, Plaintiffs satisfy each element of prima facie claims under N.Y. Gen. Bus. Law §§ 349 and 350.

The first element of a prima facie claim is met because all class members saw the "FOIL MADE IN U.S.A." label on the front of all aluminum foil products. *See Newman*, 348 F.R.D. at 583 (noting that a statement appearing on the front of the disputed product supports the conclusion that all class members saw the statement). The disputed language was uniformly positioned on aluminum foil products sold by Defendant. *See id*. (citing *Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, 481 (S.D.N.Y. 2019) (finding predominance may be met in a GBL § 349 case where "a product and its labeling remain constant and are uniform between customers.") (alterations adopted)). Thus, the products were consumer-oriented, and Plaintiffs meet the first element.

The second element is also met because common evidence is required to determine the materiality of the allegedly deceptive representation. "Importantly, *proving* materiality is not the question for class certification." *Newman*, 348 F.R.D. at 583 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 468 (2013)) (emphasis in original). The question before this Court "is whether materiality *can be determined* on a class-wide basis." *Id*. (emphasis in original).

Courts have held that classwide evidence can be used to establish whether a product's label is misleading and whether it is likely to mislead a reasonable consumer. *See, e.g.*, *Newman*, 348 F.R.D. at 584; *Scotts EZ Seed*, 304 F.R.D. at 409; *Goldemberg*, 317 F.R.D. at 389. As in those cases, here, too, Plaintiffs allege that class members suffered economic harm when they paid a premium based on Defendant's "FOIL MADE IN U.S.A." claim, and this harm will be determined through the employment of classwide evidence. ECF No. 52 at 18.

Last, for the purposes of predominance, Plaintiffs must allege injury. "Injury is adequately alleged under [N.Y. Gen. Bus. Law] §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Newman*, 348 F.R.D. at 584 (citing *Goldemberg*, 317 F.R.D. at 393). As with materiality, Plaintiffs are "not required to prove injury, but rather must demonstrate that class-wide questions predominate." *Id.* Plaintiffs must demonstrate injury by proposing a damages model consistent with their theory of liability. ECF No. 52 at 18-20; *see Newman*, 348 F.R.D. at 584 ("To satisfy this element of the predominance requirement, Plaintiff must propose a damages model consistent with her theory of liability."). Plaintiff's theory of liability is that Defendant's alleged misrepresentation "caused consumers to pay a higher price for the Products." ECF No. 52 at 19. Plaintiffs offer the methodology of Dr. Ingersoll, who proposes to use conjoint analysis to measure how much consumers would be willing to pay for aluminum foil that they believed only used materials and components that were from the U.S., compared to foil that used at least some materials and components from countries outside the U.S. *Id*. Plaintiffs further contend that, because damages are less than $50 or $500 here, most class members will opt for statutory damages over actual damages. *Sharpe v. A&W Concentrate Co.*, No. 19-cv-00768-BMC, 2021 WL 3721392, at *7 (E.D.N.Y. July 23, 2021) (finding that, where statutory damages under §§ 349 and 350 exceed the price premium, class members are likely

to choose statutory damages). Statutory damages can be assessed on the basis of common proof. *Id*. Accordingly, Plaintiffs offer a viable and reliable damages model consistent with their theory of liability. *See Newman*, 348 F.R.D. at 584. Thus, injury and relief are common questions, and Plaintiffs satisfy predominance.

**CONCLUSION**

For the reasons set forth above, the Court therefore finds that Plaintiff has satisfied all of the necessary Rule 23 requirements. Plaintiff's Motion is granted. The Clerk of Court is respectfully directed to terminate ECF No. 52.

**SO ORDERED.**

**Dated: July 30, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**